(98 App. Div. 445)

GREEN v. GRIGG.

(Supreme Court, Appellate Division, Fourth Department. November 15, 1904.)

1. CORPORATION—WANT OF LEGAL EXISTENCE—ESTOPPEL.

Where one sells a chose in action, even under false representations, to a purported corporation, he is estopped to assert a want of legal existence in the corporation as against a bona fide transferee of such corporation in a suit to recover possession of the property.

Appeal from Trial Term, Niagara County.

Suit by George F. Green against Ella Grigg. From a judgment for defendant, plaintiff appeals. Affirmed.

Argued before McLENNAN, P. J., and SPRING, WILLIAMS, HISCOCK, and STOVER, JJ.

Ackerson & Chapin, for appellant.
Millar & Moyer, for respondent.

STOVER, J. The action is brought to set aside a transfer of a bond and mortgage executed by the plaintiff, and to compel the defendant to deliver the possession to the plaintiff. In July, 1901, plaintiff was the owner of a bond and mortgage executed by one Levan to the plaintiff, and which was recorded in the Niagara county clerk's office. The plaintiff alleges that the mortgage was stolen from plaintiff and taken from his possession by one Edward W. Kapelle, otherwise known as Edward W. King. The answer denies that the bond and mortgage were stolen from the plaintiff, or taken without his consent, but alleges that they were assigned for a good consideration; that the defendant purchased the same for value, in good faith, and without any knowledge or notice of any defect in the title thereto. The facts with reference to the transfer are as follows: One Kapelle, or King, the secretary and treasurer of the Nash Improvement Company, made an agreement with the plaintiff whereby and in consideration of the transfer of said mortgage to the Nash Improvement Company, which was recited to be a domestic corporation, duly organized, etc., and having its office at the city of Niagara Falls, Niagara county, N. Y., the said company agreed to pay the said George F. Green, the plaintiff herein, the sum of $30 on the 1st day of each and every month, commencing the 1st day of August (the agreement bearing date July 10, 1901), for the remainder of his lifetime, and to furnish him, in addition to said payment, with suitable and sufficient meals, lodging, and, when necessary, with medical

attendants, and at his death procure for his remains respectable Christian burial. In connection with and in consideration for such agreement on the same day was executed the assignment in the usual form of the bond and mortgage in question, with the covenant that there was then due on the bond $3,000, with interest from the 30th day of April, 1901. This assignment was duly recorded in the office of the clerk of Niagara county, and there is no question but what the same was purchased by the defendant in good faith, and without knowledge of any fraud on the part of Kapelle or of the Nash Improvement Company. The Nash Improvement Company was apparently organized in accordance with the forms of law. · A certificate, apparently executed by three persons, was filed in the office of the Secretary of State; and a certificate of incorporation was thereupon issued from the office of the Secretary of State, the certificate being in due form. The notary who took the acknowledgment of the certificate of incorporation testified that the signatures upon the certificate were those of Mr. Aird, who was president of the company, and Mr. Kapelle; that he did not know any such person as Edward W. King or E. W. King, and no such person ever came to him to acknowledge the paper; that, "after the paper was acknowledged by Mr. Aird and Mr. Kapelle, it was given to Mr. Kapelle, and he took it away with him, and I did not see it again after that until it came up in connection with the trial." The referee has found that the Nash Improvement Company was a domestic corporation organized under the laws of the state of New York. The contention of the plaintiff upon this appeal is that said corporation was never organized; therefore there was no corporation or body in existence to whom the assignment could be made, and therefore the assignment to the Nash Improvement Company, it not being legally incorporated, transferred no title from him.

An examination of the evidence shows that negotiations were pending for some time between the plaintiff and Kapelle, as the secretary and treasurer of the Nash Improvement Company, and that the plaintiff had a great many interviews with Kapelle; Kapelle living with the granddaughter of the plaintiff as her husband. Kapelle made representations to the plaintiff as to the financial standing and ability of the Nash Improvement Company, and the evidence might have justified a finding that the plaintiff was deprived of his bond and mortgage by false representations. He undoubtedly executed the assignment of the mortgage relying upon the statements of Kapelle that the company would pay him a monthly allowance during his lifetime. And this brings us to the consideration of the main proposition in the case, namely, as to the standing of a party who is deprived of his property by false representations as against one who has become a purchaser in good faith and without notice. As to the status of the Nash Improvement Company: The referee has found that the Nash Improvement Company was organized under the laws of the state of New York, and we think the finding is justified by the evidence. Assuming that there were some irregularities in the filing of the certificate, so long as these did not appear upon the face of the certificate, and so long as, upon the face of the certificate, a corporation was apparently organized as to persons dealing in good faith upon the strength of such organization, it should

be held that such incorporation was valid, and that until impeached in a direct proceeding, or at least in some action where the fact was alleged and an opportunity given to meet the issue, such certificate would be conclusive. Certainly in this case the plaintiff is not in a position to question the validity of the organization. He has made a contract with the Nash Improvement Company, thereby representing to everybody dealing with the mortgage that there is such a corporation as the Nash Improvement Company. Having by his own act recognized and represented a corporation to exist, he cannot, as against one who has acted in good faith, and parted with money upon such representation and understanding, now claim that there is no valid organization or corporation. He is estopped, we think, from questioning the validity of incorporation. And so we come to the question of the transfer to the plaintiff. There is no doubt in this case that the defendant is a purchaser for full value, in good faith, without knowledge or notice of any claim of the plaintiff.

The case of Moore v. Metropolitan National Bank, 55 N. Y. 41, 14 Am. Rep. 173, has been and is now recognized as an authority, and the plain holding of that case is that "a bona fide purchaser, for value, of a nonnegotiable chose in action, from one upon whom the owner has, by assignment, conferred the apparent absolute ownership, where the purchase is made upon the faith of such apparent ownership, obtains a valid title as against the real owner, who is estopped from asserting a title in hostility thereto." The holding in this case was not the enunciation of a new doctrine, but it was a reiteration of the principle that, when a purchase was made upon the faith of the title which the owner had apparently given, "it would be contrary to justice and good conscience to permit him to assert his real title against an innocent purchaser from one clothed by him with all the indicia of ownership and power of disposition"; and another reason assigned was that, "were the rule otherwise, it would afford opportunities for the perpetration of frauds upon the purchasers from such apparent owners." So I think the true rule applicable to this case is that which requires that one who, by clothing another with the indicia of title, has put it within his power to act as the absolute owner of a chose in action, is, as against one dealing in good faith upon the apparent situation, estopped from asserting that the true situation is otherwise than he has stated or represented. Were the rule otherwise, gross frauds would be perpetrated when purchasing choses in action from corporations, or even from individuals. If a purchaser from a corporation is bound to look not only to the certificate as to the fact of incorporation, but must investigate as to the validity of the signatures and the actual truth of the other facts required by statute, the ordinary transfer of a chose in action would be rendered extremely difficult. But the better rule would be to hold that one who, by his own act, recognizes a corporation as an existing entity in the transfer of a chose in action, cannot, as to a person subsequently purchasing the same chose in action, relying upon the existence of the corporation, be heard to question it. The claim of the plaintiff rests upon the principle that the property was obtained by larceny, and therefore no title passed to the purchaser, but we think a plain distinction exists between a larceny by which the property is taken without the knowledge

or consent or against the will of the owner and one by false representations. In the latter cases it has been held frequently that no title passed to the subsequent transferee. But this is not at variance with the principle above laid down, as in that case the owner of the property is in no wise at fault, and has not contributed in any way to deprive himself of any right to the property, whereas, in cases like the one under consideration, the owner parts with his property willingly—that is, he intends to transfer the title—and he must know that in the ordinary course of business the property may be transferred to a third person. He has the greater opportunity for investigation, and if any one should take the initiative in determining the actual condition it should be he who is parting with his property. "If one of two innocent parties must suffer for a deceit, it is more consonant to reason that he who 'puts the trust and confidence in the deceiver should be the loser, rather than the stranger.'" Carpenter v. Longan, 16 Wall. 273, 21 L. Ed. 313. Again, "The loss should fall on him who, by reasonable diligence, could have protected himself." Nat. Savings Bank v. Creswell, 100 U. S. 643, 25 L. Ed. 713. "He who gave the power to do the wrong must bear the burden of the consequences." People's Bank v. Manf. Nat. Bank, 101 U. S. 183, 25 L. Ed. 907. The plaintiff here asks equitable interference, and, as we have seen above, the application of well-known equitable rules prevents the granting of any relief. The judgment should be affirmed.

Judgment affirmed, with costs. All concur.