173 So. 83

### BOUCHELLE v. FIRST NAT. BANK OF BIRMINGHAM.

6 Div. 965.

Supreme Court of Alabama.

March 11, 1937.

Coleman, Spain, Stewart & Davies and Carl G. Moebes, all of Birmingham, for appellant.

Cabaniss & Johnston and Jos. F. Johnston, all of Birmingham, for appellee.

FOSTER, Justice.

Without now reciting the facts in detail, the question here presented is whether a national bank may indorse a note, which it has taken for borrowed money, on its sale to another for cash, so as to bind it by such ordinary incidents of an indorsement as are not expressly waived. That is to say, though the indorsement does not recite that it is "without recourse," is a national bank so restricted by the acts of Congress that it can only transfer its paper taken for borrowed money by an indorsement without recourse. Such limitation is supposed to result from an amendment of February 25, 1927, 44 Stat. 1226, § 2, and which is now a part of section 24 of title 12 of U.S.C.A.

As it was enacted, and as applicable to the indorsement here in question, and not materially different from the Code section in respects which concern this suit, it provided: "That the business of buying and selling investment securities shall hereafter

be limited to buying and selling without recourse marketable obligations evidencing indebtedness of any person * * * or corporation, in the form of bonds, notes and/or debentures, commonly known as investment securities."

The contention, sustained by the trial court, is that the limitation includes the sale of notes taken by the bank for borrowed money in the ordinary course of its business of lending money. We cannot agree with the contention.

Reliance is had on the case of Awotin v. Atlas Exchange Nat. Bank, 295 U.S. 209, 55 S.Ct. 674, 79 L.Ed. 1393. But it does not sustain the contention. It related to a sale by the national bank of mortgage bonds of another corporation; by which the bank bound itself to repurchase them at maturity at par and interest. The question was whether such a contract was within the requirement that in buying and selling investment securities the bank must do so without recourse. It was held not to be restricted to the indorsement of negotiable paper, since the bank undertook to save harmless the buyer for all risk of loss on his purchase, as effectively as if it had indorsed the bonds without restriction, or had guaranteed their payment at maturity.

We have no more direct opinion of the United States Supreme Court declaring the effect of the amendment. We must express our own judgment. It is thought that the expressions of this opinion manifest a purpose to apply its restrictions to all notes which the national bank may sell and indorse. But the opinion refers to the fact that the amendment is the first recognition of the authority of national banks to engage in the business of dealing in securities, and that it was intended to subject that business to the limitation that it must be conducted without recourse. It was pointed out that the limitation related to buying and selling marketable obligations. We think the context shows a meaning that it only relates to such securities as the bank shall buy and sell. The business of buying and selling investment securities was there added to that which theretofore authorized such banks to exercise all the incidental powers as shall be necessary to carry on the business of banking; by discounting and negotiating promissory notes, drafts, bills of exchange, and other evidences of debt.

The amendment does not seem to have been intended to change or affect such ordinary business of banking, but added that of engaging in the business of investment bankers also, but such added business was with the limitation that the buying and selling must be without recourse, not that the ordinary incidents of banking otherwise must be with that restriction.

It has been held that the authority so to exercise the incidental powers of a banking business included authority to sell notes taken as evidence of loans of money to the maker by indorsement without restriction, or with an accompanying contract of guaranty less onerous than an indorsement. Peoples' Bank of Belleville v. Manufacturers' National Bank of Chicago, 101 U.S. 181, 25 L.Ed. 907; 7 Corpus Juris 815, § 746.

And it was held in First National Bank of Charlotte v. National Exchange Bank, 92 U.S. 122, 128, 23 L.Ed. 679, referring to Fleckner v. United States Bank, 8 Wheat. 338, 351, 5 L.Ed. 631, "that a prohibition against trading and dealing [in stocks] was nothing more than a prohibition against engaging in the ordinary business of buying and selling for profit, and did not include purchases resulting from ordinary banking transactions." If so, we do not think the restriction on the business of dealing in securities by buying and selling them was intended to be a restriction on negotiating promissory notes taken and sold in ordinary bank transactions not featuring the business on which the restriction was expressly made to apply.

Another question was argued which the view we have expressed renders unnecessary to consider.

It is our opinion that appellant is entitled to a judgment on the agreed facts, so far as any question has been argued or presented here.

A judgment is here rendered for appellant for $1,250, with interest at the legal rate from March 20, 1932, to which shall be added $200 as an attorney's fee, as provided in the indorsement. This amount is shown by the agreed facts.

Reversed and rendered.

ANDERSON, C. J., and GARDNER and BOULDIN, JJ., concur.