606 P.2d 1111

**STATE of New Mexico, Plaintiff-Appellee,**

v.

**Danny Edward MILLS, Defendant-Appellant.**

**No. 3870.**

Court of Appeals of New Mexico.

Jan. 3, 1980.

Writ of Certiorari Denied Jan. 28, 1980.

OPINION

WOOD, Chief Judge.

Defendant appeals his conviction of aggravated battery with great bodily harm. Section 30–3–5, N.M.S.A.1978. We (1) answer all but two issues summarily; (2) discuss the asserted impeachment under Evidence Rule 608(b); and (3) discuss defendant being viewed in handcuffs by one or more members of the jury.

*Issues Answered Summarily*

(a) Defendant asserts it was error, under Evidence Rule 403, to admit his bloody tennis shoes into evidence because the fact that a fight occurred between defendant and the victim was not contested. At trial, defendant had no objection to the admission of the tennis shoes as evidence. Evidence Rule 103(a)(1); N.M.Crim.App. 308.

(b) There was no error in admitting photographs of the victim. *State v. Noble*, 90 N.M. 360, 563 P.2d 1153 (1977); *State v. Bell*, 90 N.M. 134, 560 P.2d 925 (1977); *State v. Victorian*, 84 N.M. 491, 505 P.2d 436 (1973).

(c) Defendant requested two instructions on self-defense, based on U.J.I. Crim. 41.51. The difference between the two requests was paragraph numbered three in the approved instruction—"The force used by defendant ordinarily would not create a substantial risk of death or great bodily harm[.]" The trial court gave the requested instruction which included the above-quoted phrase. Defendant contends that by use of the quoted phrase, the jury was instructed as a matter of law that the victim suffered great bodily harm. The claim is frivolous. U.J.I.Crim. 41.51 informs the jury of the elements of the self-defense claim that the jury must decide— the quoted phrase was one of those elements. There was no "matter of law" instruction. In addition, defendant may not complain of an instruction given at his request. See Rule of Crim.Proc. 41(d). Compare *Platero v. Jones*, 83 N.M. 261, 490 P.2d 1234 (Ct.App.1971) and *Proper v. Mowry*, 90 N.M. 710, 568 P.2d 236 (Ct.App.1977).

Charles R. Finley, Warner & Finley, Albuquerque, for defendant-appellant.

Jeff Bingaman, Atty. Gen., Lawrence A. Barela, Michael E. Sanchez, Asst. Attys. Gen., Santa Fe., for plaintiff-appellee.

(d) At the close of the State's case-in-chief defendant moved for a mistrial on the basis of an asserted discrepancy between remarks by the prosecutor as to what the evidence would show, and the evidence actually introduced. According to defendant, in the opening statement, the prosecutor stated that an officer would testify that he observed the defendant beating the victim. The officer testified that he observed the defendant shaking the victim in such a way that the victim's head was striking the side of a parked car. The claim of a prejudicial discrepancy is frivolous. *State v. Fuentes*, 91 N.M. 554, 577 P.2d 452 (Ct.App. 1978); *State v. Martinez*, 83 N.M. 9, 487 P.2d 919 (Ct.App.1971).

(e) State's exhibit 8 consists of authenticated copies of documents pertaining to a prior conviction of defendant. Part of the exhibit consists of the indictment, verdict and sentence from district court records. Part of the exhibit consists of a penitentiary photograph, fingerprints taken at the penitentiary and another copy of the sentence, taken from penitentiary records. Defendant contends that the exhibit was improperly admitted because although admitted during cross-examination of defendant, he was not in fact cross-examined about the records. Evidence Rule 609(a) expressly permits an attack on a witness's credibility by evidence of conviction of a crime "established by public record during cross-examination . . . ."

(f) Defendant contends that the photographs, fingerprints and indictment included in State's exhibit 8 were improperly admitted because these items did nothing to test defendant's credibility. He also claims that all of State's exhibit 8 should have been excluded because these records were not "tied" to defendant. The trial court properly admitted the entire exhibit because the photographs and fingerprints showed that defendant was the person indicted and convicted.

(g) In his motion for a new trial defendant asserted he was denied due process by ineffective assistance of counsel.

His claim basically goes to trial strategy which does not establish such a claim. The record fully supports the trial court's ruling that defendant's representation was "highly competent" in a case where the evidence "was overwhelming as to the guilt of this defendant." There was no ineffective assistance of counsel. See *State v. Trivitt*, 89 N.M. 162, 548 P.2d 442 (1976); *State v. Moser*, 78 N.M. 212, 430 P.2d 106 (1967).

(h) Aggravated battery is a specific intent crime. *State v. Crespin*, 86 N.M. 689, 526 P.2d 1282 (Ct.App.1974). Defendant sought a new trial on the basis of evidence at the motion hearing that he was so drunk that he could not have had the requisite intent. The witnesses whose opinions supported an absence of intent both admitted on cross-examination that their opinions were based on what defendant had told them and that it was possible to fabricate the basis of their opinions. There was a severe problem with defendant's credibility; at his trial, defendant testified that he had been drinking, but was not drunk at the time he beat the victim. The trial court could properly deny a new trial on the basis that defendant could not have had the requisite intent because of drunkenness. See *State v. Wright*, 84 N.M. 3, 498 P.2d 695 (Ct.App.1972).

*Impeachment Under Evidence Rule 608(b)*

Renee Mills, who at the time of trial was the wife of defendant, testified as a defense witness. During cross-examination, and over defendant's objection, the State was permitted to bring out that Renee was residing with a drug rehabilitation organization. Renee explained that she went to the organization because of "problems."

Defendant contends this questioning impeached Renee's credibility and was improper under Evidence Rule 608(b). This rule permits cross-examination of a witness as to specific instances of conduct going to the witness's character for truthfulness or untruthfulness. Questions concerning residence with a drug rehabilitation organization were insufficient to show character for truthfulness or untruthfulness. There is

nothing indicating Renee was in any way involved in illegal drug activity. Compare *State v. Miller*, 92 N.M. 520, 590 P.2d 1175 (Ct.App.1979) and *State v. Cervantes*, 92 N.M. 643, 593 P.2d 478 (Ct.App.1979). The fact of residence with the drug rehabilitation organization because of "problems" shows nothing concerning the witness's character for truthfulness or untruthfulness. For lack of a sufficient showing, the questions on cross-examination concerning residence with a drug rehabilitation program were not admissible under Evidence Rule 608(b).

■ As to the contention that this was improper impeachment, the basic question is whether these questions did in fact attack Renee's credibility as a witness. Compare *State v. Davis*, 92 N.M. 563, 591 P.2d 1160 (Ct.App.1979). The contents of the cross-examination went no further than residence with an organization because of some unidentified "problems." Redirect brought out that Renee was voluntarily residing with the organization. The contents of the questions and answers show nothing as to Renee's credibility. However, the fact of voluntary residence with a drug rehabilitation organization raises the possibility of an inference that Renee was a bad character. We will assume that such an inference was permissible from the questioning of Renee.

On the basis of this assumption, defendant's contention reduces to a claim that references to Renee's residence with a drug rehabilitation organization was improper impeachment of Renee and was prejudicial to defendant. Defendant asserts there was prejudice because an attack on Renee's character was inferentially an attack on defendant's character. Defendant also asserts "it could easily be inferred that the witness was in a drug rehabilitation program because of her involvement with her husband . . . ." Defendant does not attempt to demonstrate the basis for such inferences and these are the sole claims of prejudice to defendant that have been raised.

On the record before us, the State's cross-examination concerning Renee's residence with the drug rehabilitation organization was irrelevant to any issues at the trial and should have been excluded. Evidence Rule 611(b). However, there being nothing indicating defendant was prejudiced by the irrelevant questions, no reversible error occurred. Compare *State v. Cervantes*, supra.

*Defendant Being Viewed in Handcuffs*

■ The taking of testimony was concluded shortly prior to the noon recess during the second day of trial. During this noon recess, defendant was observed by one, and possibly three, jurors being escorted from the courtroom by a uniformed bailiff. Defendant was handcuffed at the time. Defendant moved for a mistrial, asserting that this view of defendant deprived him of a fair trial and thus deprived him of due process.

At the hearing on the mistrial motion, the trial court stated that the bailiff had been instructed to keep defendant in the courtroom until the jurors had departed, that the bailiff had reported that defendant had been kept for the time normally required for the departure of jurors, that the view occurred because some jurors had used the restroom before departing. The trial court ruled that the view of defendant, in handcuffs, by one or more jurors, was inadvertent. The trial court offered to admonish the jurors to disregard the incident; defendant did not want the jury admonished.

The trial court denied the mistrial motion, pointing out that State's exhibit 8 informed the jury that defendant was a felon and was in the penitentiary, and that any impropriety resulting from the view was harmless. Exhibit 8, referred to earlier in this opinion, showed that defendant was received at the penitentiary on September 22, 1978 to serve, concurrently, two sentences of not less than one nor more than five years. The view of which defendant complains occurred on October 18, 1978. We agree with the trial court that the inadvertent view of defendant in handcuffs imparted no new information to any juror.

*State v. Gomez*, 82 N.M. 333, 481 P.2d 412 (Ct.App.1971) held the trial court did not

err in denying a mistrial because of an inadvertent view similar to the one in this case. Such an inadvertent view was insufficient to show that defendant was prejudiced. See *State v. Foster*, 83 N.M. 128, 489 P.2d 408 (Ct.App.1971).

Defendant contends that the inadvertent view, in itself, prejudiced his defense because his "presumption of innocence was shattered . . . ." Defendant relies on *Estelle v. Williams*, 425 U.S. 501, 96 S.Ct. 1691, 48 L.Ed.2d 126 (1976). Our answers are: 1. *Estelle*, supra, is not applicable; that case involved compelling defendant to stand trial in identifiable prison clothing. Defendant was not viewed in handcuffs during any courtroom proceedings, compare *State v. Gomez*, supra, but in the hall in the custody of a bailiff during a recess. 2. The circumstances of the view are important; in some instances a jury view, in the courtroom, of a manacled person would be appropriate, see *Illinois v. Allen*, 397 U.S. 337, 90 S.Ct. 1057, 25 L.Ed.2d 353 (1970), reh. denied, 398 U.S. 915, 90 S.Ct. 1684, 26 L.Ed.2d 80 (1970). 3. The harmless error rule may be applied, *Estelle v. Williams*, supra, and if error did occur, it was harmless under the circumstances of this case. 4. Inasmuch as the jury knew that defendant was an inmate of the penitentiary, there was no error because no prejudice can result from seeing that which is already known. *Estelle v. Williams*, supra.

The judgment and sentence are affirmed.

IT IS SO ORDERED.

SUTIN and WALTERS, JJ., concur.